OPINION OF THE COURT
Patricia M. DiMango, J.
This decision addresses the yet unresolved threshold question of eligibility to apply for resentencing pursuant to the third amendment of the now antiquated Rockefeller Drug Laws by an individual who is currently incarcerated on a parole violation arising from his originally imposed indeterminate sentence (see L 2009, ch 56, part AAA, § 9, codified at CPL 440.46).
The defendant has moved this court for an order granting him resentencing pursuant to CPL 440.46 (otherwise referred to as the Drug Law Reform Act of 2009 or DLRA III). Specifically, defendant Avila seeks an order vacating his previously imposed indeterminate sentence of 4[1]/2 to 9 years’ imprisonment and resentencing him to a determinate sentence in accordance with Penal Law §§ 60.04 and 70.70.
The People oppose the motion in all respects. It is their contention that the defendant is ineligible for resentence because he is not an individual in the custody of the Department of Correctional Services (hereinafter DOCS) within the purview and intent of CPL 440.46. They further opine that even if he does qualify for resentence, because of the nature and extent of his criminal background and history, substantial justice would not be accomplished by doing so.
Upon consideration and review of all submissions received on this matter through February 9, 2010, and having heard oral argument thereon in court on February 3, 2010, this court concludes that defendant Felix Avila is indeed eligible for DLRA III resentencing pursuant to the provisions of CPL 440.46 and thus the court has considered the merits of his application for a resentence. However, after careful consideration of the defendant’s background, criminal history, and institutional record, as well as the arguments made by the parties in their papers and orally in court on March 9, 2010, the court concludes that substantial justice does not dictate that the defendant be so resentenced, but rather, that his application should be denied.
*976 In reaching its decision, this court makes the following findings of fact and reaches the following conclusions of law.
On November 10, 1999, the defendant, who had been offered a drug treatment program plea, pleaded guilty (before Dowling, J.) to criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), a class B drug felony, and criminal possession of a controlled substance in the seventh degree, a class A misdemeanor, with the understanding that if he successfully completed the treatment program, the felony count would be dismissed. If he failed, the alternative sentence was to be 4V2 to 9 years’ imprisonment on the felony count and a concurrent year of jail upon the misdemeanor count. Ultimately, the defendant did not complete his drug treatment program. In fact, he left the program after only three days and was at large for approximately two years when he was returned to this court upon a bench warrant on November 13, 2001.
Subsequently, on December 18, 2001, this court resentenced the defendant to the alternative imprisonment terms of 4V2 to 9 years’ incarceration and one year of jail, both terms to run concurrently, consistent with the promised alternative sentence for failing to complete a residential drug treatment program. At that time, this sentence was the minimum period of incarceration for a second felony offender charged with a class B Penal Law article 220 drug felony.
After serving the minimum period on his sentence, the defendant was released to parole on March 16, 2007, and for reasons not relevant to the eligibility portion of his motion, Mr. Avila was violated while on parole and reincarcerated on four separate occasions. He filed the instant motion while in prison serving his time following his third violation of parole.
Addressing first the threshold question of one’s eligibility under DLRA III, the law, as codified in CPL 440.46, provides, in pertinent part, that
(1) “[a]ny person in the custody of the department of correctional services”
(2) “convicted of a class B felony offense defined in article two hundred twenty of the penal law”
(3) “which was committed prior to January [13, 2005],”
(4) “who is serving an indeterminate sentence with a maximum term of more than three years [and who does not fall within any of the enumerated statutory exclusions],”
*977 (5) “may . . . apply to be resentenced, to a determinate sentence in accordance with sections 60.04 and 70.70 of the penal law in the court which imposed the sentence.” (CPL 440.46 [1].)
These are the statutory prerequisites for standing to seek resentencing to a determinate imprisonment term under DLRA III.
Additionally, in order to qualify for resentencing, a defendant may not have a predicate felony conviction for an “exclusion offense” or be serving a sentence on an “exclusion offense” conviction (see CPL 440.46 [5]). Simply stated, an “exclusion offense” is a predicate “violent felony” offense for which the person was convicted within the 10 years (excluding tolls for incarceration) preceding the commission of the subject drug felony, or any other offense which is not merit time eligible (id.). Furthermore, any person who has been adjudicated a second violent felony offender or a persistent violent felony offender would not be eligible for DLRA III resentencing (id.).
The court hastens to note, however, that meeting the above criteria does not mean that a person is entitled to be resentenced pursuant to Penal Law §§ 60.04 and 70.70. It simply means that he is eligible to apply therefor. Whether he will or will not be so resentenced hinges upon the court’s determination as to whether “substantial justice” dictates that the application be denied or not (see CPL 440.46 [3], referencing L 2004, ch 738, §23).
In the first instance, it is undisputed that Mr. Avila has no exclusion offense prior conviction that would render him ineligible for DLRA III relief. Therefore, the remainder of the court’s eligibility discussion involves an analysis of the statutory criteria set forth in CPL 440.46 (1). As to these, the court finds as follows.
Insofar as Mr. Avila stands convicted of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), which was committed on May 6, 1999, there is no question that he was “convicted of a class B felony offense defined in article two hundred twenty of the penal law which was committed prior to January [13, 2005].” (CPL 440.46 [1].) Thus, the second and third items are clearly satisfied.
It is the first and fourth statutory criteria which engender controversy and will be the focus of this discussion.
Having passed the first hurdle of eligibility by having been convicted of the statutory requisite drug felony, a defendant *978 seeking DLRA III resentencing must next demonstrate that he is a “person in the custody of the department of correctional services . . . who is serving an indeterminate sentence with a maximum term of more than three years.” (CPL 440.46 [1].)
The defense contends that, when Mr. Avila filed the instant motion, he was such a person “in the custody of the department of correctional services,” serving such a sentence. However, given that the defendant was released on parole, violated parole, and for that reason found himself again in custody, the People maintain that Avila is not in DOCS’ custody within the intendment of the statute.
Further, while both sides agree that the defendant, originally sentenced to 4x/2 to 9 years’ imprisonment, had been serving “an indeterminate sentence with a maximum term of more than three years,” the People dispute that he, presently, is serving such a sentence. In the People’s view, having been re-incarcerated for violating his parole, the defendant is not currently serving such a sentence, but rather, is serving a parole violation sentence.
The court respectfully disagrees with the People’s position.
Rather, this court finds that, although the defendant was released to parole, he continued to serve his original sentence, and indeed, to this day continues to serve it and will do so until he has reached his maximum expiration date and has fully discharged his sentence, that is, when he is no longer either incarcerated or on parole and subject to reincarceration under his original sentence. For the law provides that a paroled prisoner continues to serve his sentence while on parole until and unless he is declared a parole delinquent or the maximum term of his sentence expires (People ex rel. Petite v Follette, 24 NY2d 60, 62-63, 64-65 [1969]; Matter of Oriole v Saunders, 66 AD3d 280, 281-282 [2009]; see also People v Hanna, 219 AD2d 792, 792-793 [1995]). Furthermore, even if he is found to have violated the conditions of his parole release and is returned to DOCS’ custody, it is his original sentence which he is continuing to serve (id.). Were that not the case, there would be no basis for such defendant’s reincarceration (assuming he had not been separately sentenced for a new crime, and if that were the case, any time served on a new case would not be credited against the original sentence) (Penal Law § 70.40 [3] [c] [iii]).
Moreover, after a defendant is declared delinquent while on parole, he is returned to an institution under the “jurisdiction of the Department of Correctional Services” (Matter of Oriole v *979 Saunders, 66 AD3d at 281; Penal Law § 70.40 [3] [a]). Additionally, as the defense aptly notes, according to the DOCS Web site printout of October 26, 2009[1] which contains the information regarding Mr. Avila’s incarceration, the defendant is incarcerated solely upon his conviction for criminal sale of a controlled substance in the third degree. DOCS has no other crimes listed as being currently served by the defendant.
Accordingly, the court concludes that this defendant, indeed, was, and still is, “serving an indeterminate sentence with a maximum term of more than three years” and is certainly at present “in the custody of the department of correctional services” (CPL 440.46 [1]). Hence, the first and fourth statutory criteria of CPL 440.46 (1) have also been met here.
Moreover, this court finds no reason to resort to review of the prior Drug Law Reform Acts, namely DLRA I and DLRA II, in order to rule on Avila’s resentencing eligibility. They simply have no bearing on this case as each of the two prior acts was directed at a different group of drug offenders, namely, class A-I drug felons and class A-II drug felons, respectively. By contrast, Mr. Avila is a sentenced class B drug felon and thus his motion is governed by DLRA III; and since the language of DLRA III is clear and unambiguous, there is no need for this court to engage in any statutory interpretation in order to apply the law to the case at hand.
Having found that Mr. Avila satisfies all of the statutory criteria of DLRA III with regard to eligibility for resentencing, the court next addresses the ultimate question of whether, after assessing his background and circumstances and prison record, the defendant should, in fact, be granted a resentence. For the reasons advanced below, the court concludes not.
CPL 440.46 (3) directs that the determination of a motion for resentencing pursuant to DLRA III shall be governed by the provisions of section 23 of DLRA I (L 2004, ch 738, § 23). As here pertinent, section 23 provides that, after ruling a person eligible for resentencing, the court
“may consider any facts or circumstances relevant to the imposition of a new sentence which are *980 submitted by such person or the people and may, in addition, consider the institutional record of confinement of such person, but shall not order a new presentence investigation and report or entertain any matter challenging the underlying basis of the subject conviction.”
Further, the “court shall offer an opportunity for a hearing[2] and bring the applicant before it [and t]he court may also conduct a hearing, if necessary, to determine whether such person qualifies to be resentenced or to determine any controverted issue of fact relevant to the issue of sentencing” (L 2004, ch 738, § 23).
The statute directs that, upon the court’s review of the submissions and the findings of fact made in connection with the application, the court shall render its determination with regard to the application for resentencing, either granting a resentence and setting forth its proposed determinate resentence, or denying the application where “substantial justice dictates that the application should be denied” (id.).
This court has conducted such a review, and, upon due consideration of all of the relevant material, concludes, for the following reasons, that Mr. Avila is not the type of individual whose background and history justifies that he be resentenced under DLRA III.
To start, the court notes that the defendant has a litany of arrests and convictions. His New York convictions, comprised of 2 felonies and 25 misdemeanors, date back to 1992 and all but one were adjudicated under several of the defendant’s various aliases. Additionally, the defendant [1] ‘bench-warranted” on numerous occasions during the course of his criminal career, the earliest being in 1992 after he was arraigned following his first reported arrest.
At the time of his plea, the defendant admitted that on May 6, 1999, at the corner of Newkirk and Nostrand Avenues, in *981 Brooklyn, Kings County, he gave two plastic twists containing crack cocaine to an undercover police officer in exchange for $20 of what turned out to be prerecorded buy money. This transaction occurred within 1,000 feet of St. Stephen’s Lutheran School. According to the court records and parties’ papers, the undercover officer then notified a field team comprised of uniformed police officers who then moved in, arrested the defendant, and, pursuant to a search of his person, recovered $5 of the prerecorded buy money. Four additional twists containing crack cocaine were recovered by the officers from the ground where Avila was observed to have tossed them.
The defendant was subsequently indicted for crimes constituting criminal sale of a controlled substance in or near school grounds (Penal Law § 220.44), criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), and criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), three class B drug felonies, and was also charged with criminal sale of a controlled substance in the fifth degree (Penal Law § 220.31), a class D felony, and criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), a class A misdemeanor.
Thereafter, on November 10, 1999 in satisfaction of the instant indictment, No. 5576/99, the defendant pleaded guilty to criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. This was a negotiated plea with the consent of all parties whereby the defendant agreed to enter a residential drug treatment facility with the understanding that, upon successful completion of the program, his plea to the felony count would be dismissed and vacated, and that he would receive a nonjail sentence upon his misdemeanor plea. However, it was further agreed by all sides that, should he fail to complete the treatment program for any reason, Mr. Avila would receive a sentence of 4V2 to 9 years’ imprisonment upon the felony, which at that time was the minimum period of incarceration for a second felony offender charged with a class B drug felony, together with one year of concurrent jail time on the misdemeanor count (Dowling, J., at plea).
In December 1999, the defendant was placed in a residential treatment facility where he remained for three days and then left without permission, in violation of the conditions of his plea and treatment agreement. The court was notified and a bench warrant was issued for Avila’s arrest. Thereafter, in May of *982 2000, Felix Avila was arrested in Pennsylvania and was ultimately convicted there of “Criminal Conspiracy” relating to a drug offense. He was sentenced on this felony to 6 to 13 months’ incarceration on July 16, 2001. It was not until nearly two years after absconding from treatment that the defendant was returned to New York, on November 13, 2001.
Concluding that Mr. Avila had violated the plea terms and conditions, as well as the treatment plan, on December 18, 2001, consistent with the promise, this court sentenced the defendant to the alternative sentence of 4V2 to 9 years on the felony and one year concurrent time on the misdemeanor. Thus, on December 27, 2001, the defendant was taken into state custody to serve this sentence. The defendant was released to parole on March 16, 2007. Later that same year, Avila was again taken into custody by the Pennsylvania authorities for new crimes which, although eventually dismissed in Pennsylvania, led to his extradition to New York and a revocation of his parole, causing him to be returned to prison on December 7, 2007. Having completed his time for that parole violation, the defendant was released on March 4, 2008, but subsequently was convicted of another parole violation and returned to prison on January 21, 2009.
Released to parole for a third time on February 20, 2009, Avila was ordered to go to an approved residence within 24 hours of his release. He failed to comply with that order, and also did not report to his parole officer just four days later. Based on these transgressions, Avila was once again held to be in violation[3] of his parole status. Thus, his parole was revoked, a parole warrant was issued, and, following his apprehension, the defendant was once more incarcerated on the instant conviction, on June 8, 2009, having received seven months in jail for this third parole violation.
On October 27, 2009, while still incarcerated for his third violation of parole, the defendant filed the instant motion. At that time, the maximum expiration date of his sentence was March 18, 2011. Avila was thereafter released for a fourth time *983 less than one month later. As noted in subsequent submissions by the defense, since that time, following his most recent release, the defendant was accused of violating the terms of his parole. This court has learned[4] that the defendant is again incarcerated in a DOCS facility serving further time upon his drug conviction after his last violation of parole. His earliest possible release date is in July 2010.
In light of the foregoing, namely, the defendant’s repeated refusals to comply with the terms of his parole, his unwillingness to participate in mandated treatment, and his repeated instances of absconding, as well as his criminal history dating back to 1992, the court finds that Mr. Avila is not the sort of individual deserving of DLRA III resentencing. Otherwise stated, substantial justice dictates that the defendant’s application should be denied. Accordingly, the instant motion is, respectfully, denied.

. This printout reflects the defendant’s status at the time the instant motion was made, the motion having been dated October 27, 2009 and filed on October 28, 2009. Furthermore, this court has learned that Mr. Avila is currently in DOCS’ custody and will remain there serving time upon his drug conviction through at least July 5, 2010, following his most recent parole violation.

. On March 9, 2010, the court heard both sides on the question of “substantial justice.” Counsel for the defendant noted that the defendant had now served seven years for the sale of two twists of crack cocaine and the possession of an additional four twists. Counsel urged that this sentence was disproportionate to what Avila would have received under current sentencing guidelines where, as a predicate felon, he could now have been sentenced to “as little as two years.” Thus, the defense was urging that the defendant be resentenced to a term at the lower end of the available sentencing range. On the other hand, given the defendant’s criminal history and his repeated violations of parole, the People argued that substantial justice dictated that he not be resentenced at all.

. In the defendant’s parole violation report it is noted that the defendant was referred to the Com-Alert outpatient treatment program. While the report indicates that the defendant completed the program, this appears to be the result of a typographical error, namely, the inadvertent omission of the word “not,” as is apparent from the context of the report and the fact that the defendant had absconded just a few days after having been released from prison. Thus, this court agrees with the People’s observation that the defendant apparently also failed to attend this mandated outpatient treatment program.

. At its own instance, this court has obtained a current DOCS printout pertaining to Mr. Avila’s sentence from the DOCS Web site. The printout reflects that, on March 15, 2010, the defendant was returned to a DOCS facility, and his earliest release date is July 5, 2010. His new, recalculated, maximum expiration date is April 24, 2011.